IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEREMIAH JACKSON, | ) | CASE NO. 1:18 CV 934 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| TIM SHOOP, Warden, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Respondent. | ) | **AND ORDER** |
| | ) | |

Petitioner Jeremiah Jackson has now filed in this capital habeas corpus case a motion to stay these proceedings and hold them in abeyance while he pursues remedies in Ohio state courts. (Doc. 41.) Jackson seeks to return to state court to exhaust three of his habeas claims based on his recent diagnosis of schizoaffective disorder, which he argues was exacerbated by drug dependency at the time of his offense and trial. (*Id.* at 6-7.)[1] Respondent Warden Tim Shoop opposes the motion. (Doc. 43.) Jackson has filed a reply brief. (Doc. 44.) For the following reasons, Jackson's motion is granted.

## RELEVANT BACKGROUND

In June 2009, Jackson embarked on a 16-day crime spree that began with his attempted murder of Stanley Bentley, escalated with six robberies over three Ohio counties, and culminated in the murder of Tracy Pickryl. *See State v. Jackson*, 141 Ohio St. 3d 171, 171-78 (Ohio 2014), *reconsideration denied*, *State v. Jackson*, 142 Ohio St. 3d 1425 (Ohio 2015). Jackson was arrested soon after Pickryl's murder and charged in a 42-count indictment, including aggravated murder,

---

[1] All references to page numbers of documents in the court's electronic court filing system ("ECF") are to the page numbers of the individual ECF documents, not to the original documents' page numbers or ECF "PageID" numbers.

attempted murder, felonious assault, aggravated robbery, robbery, theft, and kidnapping. *Id.* at 175, 178-79.

Issues related to Jackson's mental health and intellectual abilities soon rose to the forefront of his case. At the defense's request, the trial court ordered Dr. Michael Aronoff, a psychologist with the Cuyahoga County Court Psychiatric Clinic, to evaluate Jackson's competency and sanity. (*See* Doc. 17-1 (Trial Tr.) at 178.) Dr. Aronoff concluded at a competency hearing in October 2009 that Jackson was sane at the time of the offenses and competent to stand trial. (Doc. 16-1 at 4.)

The Supreme Court of Ohio recounted in its decision on Jackson's direct appeal, however, that "[b]efore trial, the court expressed concern about defense counsel's strategy and trial preparation." *Jackson*, 141 Ohio St. 3d at 181. In January 2010, the trial court scheduled a hearing on "'whether the defendant's attorneys have truly prepared this case for trial or (A) have only planned to plead the defendant guilty to one or more charges and/or (B) have planned to under-represent the defendant and provide him with an ineffective assistance of counsel basis for later appeal.'" *Id.*

That March, defense counsel informed the court that they would not pursue a claim that Jackson was intellectually disabled and therefore ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002). *Jackson*, 141 Ohio St. 3d at 181-82. The court then ordered that a "limited hearing" be held on March 22, "'to build a record to establish that the *Atkins* issue was considered, diligently investigated, and a justifiable decision made to pursue it or not.'" *Id.* Dr. Aronoff and Dr. John Fabian, a forensic and clinical psychologist retained by the defense, both opined at the hearing that Jackson was not intellectually disabled; the trial court made no findings on the matter. *Id.* at 184.

At a pretrial hearing that same day, Jackson submitted to the court a written waiver of his right to a jury trial and elected to be tried instead by a three-judge panel. *See id.* at 188-93. The trial

court conducted an inquiry into the matter, during which Jackson complained to the court that his head was "banging" and he "[couldn't] really focus right now." *Id.* at 191-92. Defense counsel told the court that Jackson was a "little delusional" but did not challenge Jackson's ability to understand the waiver or request a recess or continuance. *Id.* The court accepted the jury-trial waiver. *See id.* at 190.

A few weeks later, on April 7, 2010, the panel found Jackson guilty of the aggravated-murder counts and the accompanying death-penalty specifications, as well as all noncapital counts and accompanying gun specifications. *Id.* at 179. Following a mitigation hearing, the panel sentenced Jackson to death. *Id.*

Jackson appealed his convictions and death sentence to the Supreme Court of Ohio. In doing so, he raised claims relating to his competency to waive a jury trial and ineffective assistance of trial counsel in failing to object to continuing with the jury-waiver inquiry after counsel described Jackson as delusional. *See id.* at 188-93, 205. Jackson argued that the trial court should have stopped the waiver colloquy once he complained of his headache and lack of focus and defense counsel informed the court that Jackson was a "little delusional," which "rais[ed] a question whether he had a psychological problem." *Id.* at 191-92.

The court concluded that the trial court appropriately accommodated Jackson's headache when, after Jackson told the court he was dehydrated, Jackson was given water and permitted breaks. *Id.* at 192. The court noted that neither Jackson nor his counsel requested a recess or continuance. *Id.* The court further found that counsel's comment about Jackson being delusional "was followed by counsel's statement, 'That is why we got the water.'" *Id.* This demonstrated, the court explained, "that defense counsel was talking about Jackson's dehydration and not a psychological problem." *Id.* The court also rejected Jackson's related ineffective-assistance claim because

3

defense counsel's statement in its entirety shows that counsel was talking about Jackson's dehydration and not a psychological problem. Jackson had been evaluated and found competent to stand trial. Moreover, there is no evidence indicating that he suffered from any type of debilitating mental disorder that might have affected his ability to waive a jury trial. *See State v. Leonard,* 8th Dist. Cuyahoga No. 86310, 2006-Ohio-1943, 2006 WL 1044571, ¶ 32 (defendant's headaches were not a mental illness so debilitating that they affected his ability to enter a valid guilty plea). Under these circumstances, Jackson fails to establish that his counsel were ineffective by failing to object to continuing the waiver inquiry.

*Id.* at 205.

Jackson also raised several ineffective-assistance-of-counsel claims related to counsel's mitigation efforts on direct appeal, including that: (1) counsel was not prepared to present mitigating evidence; (2) counsel failed to adequately prepare Dr. Fabian so he could address in his testimony how Jackson's substance abuse, low intelligence, and child abuse affected his actions on the date of the murder; and (3) counsel was ineffective by failing to obtain a substance-abuse expert to establish the nexus between Jackson's substance abuse and the offenses. *See id.* at 211-16. In rejecting these claims, the state court provided a thorough analysis of Dr. Fabian's expert psychological evaluation and Jackson's failure to present sufficient evidence to support his allegations of deficient performance. *Id.* The court affirmed Jackson's convictions and sentence of death. *Id.* at 171. Jackson appealed to the United States Supreme Court, which declined further review. *Jackson v. Ohio*, 577 U.S. 959 (2015).

While his direct appeal was pending before the Supreme Court of Ohio, Jackson filed a petition for post-conviction relief in the trial court, in which, among other claims, he again challenged the validity of his jury-trial waiver and asserted that trial counsel were ineffective in advising Jackson regarding his jury-trial waiver and in presenting mitigation evidence. *State v. Jackson*, No. 104132, 2017 WL 1742715, at *3-11 (Ohio Ct. App. May 4, 2017). Specifically, Jackson alleged that trial counsel failed to obtain a complete and sufficient mental health assessment from a competent psychologist, for which he submitted as support an affidavit of psychologist Dr. Jolie

4

Brams. *See id.* at *6. The petition presented Dr. Brams' conclusion that, in evaluating Jackson, he exhibited

> significant mental health issues that, combined with his polysubstance abuse, set the stage for the commission of the offenses. He clearly has a life[-]long mood disorder, with psychotic features, and his functioning, judgment, reasoning, and ability to discern reality is further impaired when under the influence of these damaging and powerful substances. Certainly, his limited intellectual abilities compounded his deficits. This central issue, as well as all the other significant issues noted in this report, were inaccurately addressed, or not addressed at all, by the trial attorney and expert.

(Doc. 16-6 (Post-Conviction Petition) at 64-65.) Jackson also asserted that trial counsel were ineffective for failing to retain a substance abuse expert. (*See id.* at 69-71.)

As to Jackson's claim that his waiver of a jury trial was invalid, he argued that neither the trial court nor his trial counsel properly informed him regarding the waiver's consequences. (*See id.* at 85-87.) The trial court dismissed Jackson's postconviction petition without a hearing. *Jackson*, 2017 WL 1742715, at *2. The state appellate court affirmed the trial court's judgment, addressing the mitigation ineffective-assistance and jury-waiver claims on the merits. *Id.* at *6-10, 14-15. And the Supreme Court of Ohio declined to hear Jackson's appeal. *State v. Jackson*, 151 Ohio St. 3d 1505 (Ohio 2018).

Jackson filed a petition for a writ of habeas corpus in this Court on January 31, 2019. (Doc. 23.) Respondent filed a return of writ on April 1, 2019. (Doc. 24.) On September 3, 2019, Jackson moved to amend his petition to include "recently obtained" new evidence – namely, a "new expert report concerning the neuropharmacological impact that Jackson's prolonged, intensive drug abuse had on his previously-undiagnosed schizoaffective disorder" – to support his claims of ineffective assistance of counsel in presenting mitigation evidence and his challenge to the constitutionality of his waiver of a jury trial and related ineffective-assistance claim. (Doc. 30 at 1; Doc. 30-1 (Proposed Amended Petition) at 33-51.) Respondent opposed the motion. (Doc. 32.) I granted Jackson's motion (Doc. 34), and Respondent filed an amended return of writ on April 27, 2020. (Doc. 37).

5

Now, Jackson asks the Court to stay his habeas case and hold it in abeyance so that he can develop the three claims in his amended petition that rely on his newly developed information regarding his mental health and drug dependency at the time of the offense and trial – namely, the ineffective-assistance claim regarding mitigation and his challenge of the jury-trial waiver and related ineffective-assistance claim. (Doc. 41 at 6-8.)[2] Respondent opposes the motion on the ground that these claims are procedurally defaulted and not unexhausted. (Doc. 43 at 2.)

## ANALYSIS

### A. Legal Standards

State prisoners must fully exhaust federal constitutional claims in state courts before those claims may be reviewed by federal district courts on habeas corpus review. 28 U.S.C. § 2254(b)(1). This entails giving state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The exhaustion doctrine, however, refers only to remedies still available at the time of the federal petition. *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981). In that situation, procedural default and not exhaustion bars federal habeas review. *See, e.g., Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . . it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law'") (internal citations omitted); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("[I]f an unexhausted claim would be

---

[2] On August 3, 2020, Jackson notified the Court that on July 24, 2020, he filed a second post-conviction petition pursuant to Ohio Revised Code § 2953.23 in the Cuyahoga County Court of Common Pleas. (Doc. 42; *see also* Doc. 42-1 (petition filed in *State v. Jackson*, CR-09-532145-A).)

procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review.").

In *Rose v. Lundy*, 455 U.S. 509 (1982), the Supreme Court held that when a habeas petitioner presents a "mixed petition," with both exhausted and unexhausted claims, comity requires that state courts have the first opportunity to review the unexhausted claims. *Id.* at 518-19. *Lundy*'s "total exhaustion" requirement created a dilemma for petitioners, however, as a return to state court could result in the unexhausted claims becoming time-barred under the Antiterrorism and Effective Death Penalty Act's ("AEDPA") one-year statute of limitations.

To avoid this harsh result, in *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court gave district courts two options when confronted with a mixed petition: (1) deny unexhausted claims that are "plainly meritless"; or (2) for good cause, stay the action and permit the petitioner to present his unexhausted claim to state court and then return to federal court for review of the perfected petition. *Id.* at 277. The *Rhines* Court explained that stay and abeyance is appropriate "only in limited circumstances," where the district court determines that: (1) there was good cause for the petitioner's failure to exhaust claims first in state court; (2) the petitioner's unexhausted claims are not plainly meritless; and (3) the petitioner has not engaged in abusive litigation tactics or intentional delay. *Id.* at 277–78. Stay and abeyance should be used sparingly, the Court cautioned, because "if employed too frequently, [it] has the potential to undermine the[] twin purposes" of AEDPA, which was enacted to "'reduce delays in the execution of state and federal sentences, particularly in capital cases,'" and to encourage petitioners to seek relief from state courts first. *Id.* at 276-77 (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)).

### B. Merits Analysis

Jackson claims that three of his habeas claims are unexhausted and requests a stay and abeyance so that he can litigate them in state court. (*See* Doc. 41 at 6-7.) They are: (1) trial-court

error in permitting Jackson to waive his right to a jury trial in light of his mental illness, intellectual disability, and drug dependency; (2) ineffective assistance of trial counsel in failing to uncover Jackson's mental illness and ensure his jury-trial waiver was knowing and intelligent; (3) ineffective assistance of trial counsel in developing and presenting mitigation evidence regarding his mental illness and substance abuse at the penalty phase of trial. (*Id.*) Respondent argues that the claims Jackson seeks to exhaust in state court are not in fact unexhausted, but are procedurally defaulted because Jackson has no state remedies available to him. (Doc. 43 at 2.)

Two of these claims – regarding the validity of the jury-trial waiver and defense counsel's mitigation efforts – are not unexhausted *or* procedurally defaulted. Jackson presented both claims in state courts on direct appeal *and* post-conviction review, and they were adjudicated on the merits. *See Jackson*, 141 Ohio St. 3d at 188-93, 211-16 (direct appeal); *Jackson*, 2017 WL 1742715, at *6-10, 14-15 (post-conviction review). As explained above, Jackson's post-conviction petition included supporting extra-record evidence of Jackson's psychological and drug problems, as well as trial counsel's related ineffective assistance. (Doc. 16-6 (Post-Conviction Petition) at 64-65; 69-71.) A return to state court would be prohibited under Ohio's *res judicata* rules. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("Under Ohio law, the failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under the State's doctrine of *res judicata*."); *State v. Perry*, 10 Ohio St. 2d 175, 180 (Ohio 1967) (Ohio's *res judicata* rule precludes a defendant from raising for the first time in post-conviction proceedings a claim that was fully litigated or could have been fully litigated at trial or on direct appeal.).

Nevertheless, Jackson argues that the claims "are unexhausted insofar as [they] depend[] upon the fact that Mr. Jackson suffers from Schizoaffective Disorder, a serious mental illness, that was exacerbated by drug dependency." (Doc. 41 at 6-7.) The Sixth Circuit has held, however, that the

8

*Rhines* stay-and-abey mechanism does not apply to "unexhausted evidence," such as a new expert report.

In *Carter v. Mitchell*, 829 F.3d 455, 464-65 (6th Cir. 2016), a petitioner sought to stay his habeas case and return to state court to present additional evidence supporting claims that were on remand to the district court after the circuit court had determined that he had not procedurally defaulted them. The petitioner had obtained new mitigation evidence, primarily from a social worker's report prepared at the time of his trial, to support his ineffective-assistance-of-counsel claims regarding the presentation of mitigation evidence at his trial. *Id*. The circuit court denied his request. *Id*. at 467. It determined that because the evidence at issue was available at the time of his trial, even though it was never made a part of any state-court record, it was "certainly not new." *Id*. at 466. The evidence might have been "more compelling," it observed, but "that does not by itself allow us to extend *Rhines* stays to encompass 'unexhausted evidence.'" *Id*. at 467.

The court considered the petitioner's request an attempt "to use *Rhines* as an end-run around *Pinholster*, with the added benefit that a return to state court might delay his impending death for a substantial period." *Id*. In *Cullen v. Pinholster*, 563 U.S. 170 (2011), the Supreme Court held that a district court's habeas review of claims exhausted in state court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id*. at 181. The circuit court concluded in *Carter* that "[a]llowing a petitioner periodically to discover (or rediscover) information about himself would frustrate that goal, and could incentivize capital defendants to "deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death." *Id*. (quoting *Rhines*, 544 U.S. at 277–78). Jackson is not entitled to stay-and-abeyance under *Rhines*, therefore, to further litigate his jury-trial waiver and mitigation ineffective-assistance claims in state courts.

Jackson's third claim at issue, however, asserting ineffective assistance of counsel relating to the jury-trial waiver, is not clearly exhausted. Jackson presented a similar ineffective-assistance claim on direct appeal in state court, as noted above, but it was limited to facts in the trial-court record and did not include Jackson's allegations here of trial counsel's failure to investigate his psychological condition, supported with an affidavit from one of his trial attorneys describing the circumstances surrounding the waiver and an expert's diagnosis of schizoaffective disorder. *See Jackson*, 141 Ohio St. 3d at 205.

Jackson also raised a similar ineffective-assistance claim on state post-conviction review, but, again, it was slightly different – more focused on counsel's advice regarding the waiver than any psychological impediments to a valid waiver. (*See* Doc.16-6 (Post-Conviction Petition) at 87.) As Justice Sotomayor observed in *Pinholster*, "There may be situations in which new evidence supporting a claim adjudicated on the merits gives rise to an altogether different claim." *Pinholster*, 563 U.S. at 213 n.5 (Sotomayor, J., dissenting). This claim appears to be one of those situations.

But even if this claim were unexhausted, Jackson must demonstrate that a return to state court would not be futile, in which case the claim would be procedurally defaulted as Respondent contends. Ohio law permits second, successive, or untimely post-conviction petitions if the petitioner shows that: (1) he was "unavoidably prevented from discovery of the facts" of the claim; and (2) there is clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which he was convicted or eligible for the death sentence. Ohio Rev. Code § 2953.23(A)(1).[3] The parties focus their dispute on the first requirement.

---

[3] This provision also applies where the petition asserts a claim based on a new and retroactive constitutional right recognized by the United States Supreme Court, but that is not at issue here. *See* Ohio Rev. Code § 2953.23(A)(1)(a).

Jackson argues that he was unavoidably prevented from discovering the facts underlying this claim because his trial and post-conviction counsel failed to properly investigate his psychological condition or properly present the claim. (Doc. 44 at 3-8.) Respondent contends that Jackson's arguments for "cause" is an "implicit recognition" that the facts at issue were available at the time of trial and this claim, therefore, is procedurally defaulted and not unexhausted. (Doc. 43 at 4.)

Ohio courts recognize that a defendant is deemed to have been "unavoidably prevented" from discovering the factual basis of his claim "if he had no knowledge of the existence of those facts and could not have, in the exercise of reasonable diligence, learned of their existence within the time specified for filing his petition for postconviction relief." *State v. Cunningham*, 65 N.E.3d 307, 313 (Ohio Ct. App. 2016) (collecting cases). "And the 'facts' contemplated by R.C. 2953.23(A)(1)(a) are the historical facts of the case, which occurred up to and including the time of conviction." *Id.* Ohio courts further have noted that there is no "unavoidable prevention" where "the defendants could not explain why neither they nor their trial counsel could not have discovered the evidence with the exercise of reasonable diligence." *State v. Howard*, 59 N.E.3d 685, 699 (Ohio Ct. App. 2016) (citing *State v. Anderson,* No. 12AP–133, 2012 WL 4848949, at ¶ 14 (Ohio Ct. App. 2012); *State v. Golden,* No. 09AP–1004, 2010 WL 3641550, at ¶ 13 (Ohio Ct. App. 2010)).

Arguably, Jackson was aware of his psychological condition and addiction problems, and he could have obtained his medical records and instructed his trial and post-conviction counsel to investigate these matters more thoroughly. But as one Ohio appellate court recognized, in evaluating whether a defendant had met the "unavoidable prevention" requirement under § 2953.23(A), there is a risk in "placing the onus of responsibility to thoroughly investigate a case on the defendant when the defendant is represented by and relying on counsel[,]" especially where there is no evidence that the "defendant knew of material information that he kept to himself prior to trial." *Id.* Therefore, where a defendant "relie[s] on his trial counsel to fully investigate his case, and

11

his trial counsel fail[s]to do so[,]" the court held, a defendant may be "unavoidably prevented from discovering the facts necessary for his claim[s]" for purposes of § 2953.23(A). *Id.*

Jackson presents credible evidence that he suffers from schizoaffective disorder, which, he alleges, preexisted his offenses and trial and was heightened by drug abuse. (*See* Doc. 23-5 (Brand Rpt.); Doc. 40-1 (Lipman Rpt.).) Jackson also is in the borderline range of intellectual functioning (the fifth percentile). (S*ee* Doc. 23-5 (Brand Rpt.) at 18.) He clearly, therefore, did not have the capacity to understand the extent of his psychological condition or to actively participate in the development or presentation of evidence in his defense or appeals.

Jackson further presents credible evidence that information about his psychological and intellectual condition was available to trial and post-conviction counsel, but they failed to thoroughly investigate and properly present it in court. One of his trial attorneys avers that he "had no question that [Jackson] was mentally ill," describing him as "incompetent" and not "rational," with an affect at the time that was "seriously strange." (Doc. 23-4 (George Aff.) at 3.) He also stated that Jackson "did not appear to grasp the severity of the situation he was in, that he could be sentenced to death." (*Id.*) And he conceded that he "would give myself and Mr. Mullin [lead counsel] a grade of "F" on our mitigation efforts." (*Id.*) Further, Jackson alleges, post-conviction counsel had access to Dr. Brams, who diagnosed Jackson as "suffering significant biologically-based mental health difficulties" and "significant distortions of reality, and has experienced these oddities over the course of his life, and . . . especially when under stress or, more importantly, when under the influence of mood or mind altering substances." (Doc. 16-6 at 105 (Brams Rpt.).) And she provided a detailed and highly critical evaluation of the investigation and testimony of the defense expert, Dr. Fabian, regarding Jackson's psychological condition, intellectual abilities, and substance abuse, including his "misdiagnoses of Mr. Jackson's mental health history and difficulties, . . . [omitting ] significant diagnostic and historical information, and minimiz[ing] or misinterpret[ing] various aspects of his

functioning." (*Id.* at 104.) Yet, even with Dr. Brams' assistance, post-conviction counsel did not present an ineffective-assistance claim explicitly challenging trial counsel's failure to investigate the severity of Jackson's mental illness in relation to his ability to knowingly and intelligently waive his fundamental right to a jury trial.

Under these circumstances, I agree that Jackson has made a sufficient showing that he may satisfy the requirements of Ohio Rev. Code § 2953.23, so that he can exhaust his claim in Ohio courts asserting ineffective assistance of trial counsel with regard to his waiver of a jury trial. He therefore meets the *Rhines* test for stay and abeyance of these federal habeas proceedings.

## Conclusion

Accordingly, Jackson's motion to stay these habeas proceedings and hold his case in abeyance while he exhausts his unexhausted ineffective-assistance claim in state court (Doc. 41) is granted. I further order that Jackson: (1) submit status reports every ninety days regarding the status of his efforts to exhaust his unexhausted claim; and (2) seek reinstatement on this Court's active docket within thirty days of fully exhausting his state-court remedies.

IT IS SO ORDERED.

Dated: March 30, 2021
s/ Jeffrey J. Helmick
JEFFREY J. HELMICK
UNITED STATES DISTRICT JUDGE